## THE FRED RICHARDS.

(Circuit Court of Appeals, Second Circuit. May 2, 1910.)

No. 191.

1. COLLISION (§ 66*)—TUG WITH TOW AND SAILING VESSEL MEETING—FAULT OF TUG.

Evidence considered, and *held* to show that a tug with a tow on a long hawser was solely in fault for a collision at sea in the night between her tow and a sailing yacht, which met on nearly parallel courses.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 84; Dec. Dig. § 66.*

Signals of meeting vessels, see note to The New York, 30 C. C. A. 630.]

2. COLLISION (§ 77*)—FAULT—LOOKOUT.

The fact that the lookout on a yacht was a Central American Indian incapable of speaking English did not impair his efficiency as a lookout, nor in itself constitute a contributing fault on the part of the yacht for a collision brought about by improper navigation by the other vessel.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 140–149; Dec. Dig. § 77.*]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by Margaret S. Brandreth, as owner of the yacht Taormina, against the steam tug Fred Richards. Decree for libelant, and claimant appeals. Affirmed.

Wing, Putnam & Burlingham (James Forrester, of counsel), for appellant.

James J. Macklin (De Lagnel Berier, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. February 3, 1907, about 9:40 p. m., the yawl-rigged yacht Taormina, bound from New York to Newport News, came into collision with a barge towing astern of the tug Fred E. Richards on a hawser 200 fathoms long. The tug and barge belonged to the claimant, and were bound from Philadelphia to Boston. The jibboom and headsails of the yacht were carried away, and she began to leak considerably. Under these circumstances it was perfectly natural that signals of distress should have been displayed on the yacht, as her witnesses testify they were. The witnesses from the tug say that they stood by half an hour (although they did not know there had been a collision until they arrived next morning at Whitestone, Long Island), and saw no distress signals. We do not credit

their testimony on this point, and are satisfied that they did not lay by at all, and failed to see the distress signals because of gross negligence, or willfully disregarded them. The trial judge held that the tug's failure to stand by raised a presumption under the act of September 4, 1890, that the collision was caused by her fault, and we think he was right in so doing. But we arrive at the same conclusion on the testimony.

There is, as usual, great contradiction between the witnesses; but certain significant facts are admitted, viz.: The wind was northwesterly; the yacht was proceeding down the coast upon a course S. by W. ¼ W.; the tug and tow were proceeding up the coast on a course of N.N. E.; the vessels were going at about the same speed, and there was but a difference of three-quarters of a point between their courses. The yacht passed the tug close to, port to port, and struck the starboard side of the barge an angling blow, without fouling the towing hawser. As she drew with her fin keel some 12 feet, it is obvious that the towing hawser must have been slack, and that this must have been caused by the stopping of the tug. As the barge was considerably on the port quarter of the tug and the wind was from the westward, the tug must either have ported or the barge starboarded.

We believe the vessels were approaching each other nearly head on at about the same rate of speed, so that their courses would cross at a point where they would be very near each other. It was for this reason that the tug stopped to let the yacht cross her bow, and that the yacht, seeing herself in such close proximity to the tug, put her helm down, so as to come up into the wind several points and give the tug and tow safe clearance. When, however, she discovered the barge on her starboard hand, she at once put her helm up rather than take the risk of crossing the bow of the barge, and scraped along her starboard side. The yacht did not change her course until the tug was in such close proximity to her that any change was an act in extremis, for which she is not chargeable with fault.

We do not attach much importance to the fact that the second officer, who was in charge of the yacht at the time of the collision, and the lookout, were not examined. The former was drowned before the trial, and the latter was a Central American Indian, quite incapable of speaking English. This would not prevent him from being an effective lookout.

The claimant relies upon The City of Rio de Janeiro, 130 Fed. 76, 64 C. C. A. 410, 69 L. R. A. 71, which does not seem to us applicable. In that case the owners were denied the benefit of the law limiting liability, because they had manned their vessel with a Chinese crew, who had been given no training in launching boats, and, because of their inability to understand orders after the stranding, the loss of life and baggage was greatly increased.

Decree affirmed, with interest and costs.